**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
    *eric.poulin@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
    *paul.doolittle@poulinwilley.com*
Seth Little (*Pro Hac Vice* Forthcoming)
    *seth.little@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

**BOHREN LAW**
John C. Bohren (California State Bar No. 295292)
8560 West Sunset Boulevard, 4th Floor
West Hollywood, CA 90069
Telephone: (619) 433-2803
Fax: (800) 867-6779
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Vincent Brandt, individually and on behalf of all others similarly situated**, <br><br> **Plaintiff**, <br><br> **vs.** <br><br> **KIA AMERICA, INC.** <br><br> **Defendant.** | **Case No.:** _____ <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> **(1) Breach of Implied Warranty of Merchantability** <br> **(2) Fraud by Omission or Fraudulent Concealment** <br> **(3) Unjust Enrichment** <br> **(4) Strict Liability: Design Defect** <br> **(5) Strict Liability: Manufacturing Defect** <br> **(6) Violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 Et Seq.** <br> **(7) Declaratory Judgment** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

1

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiff Vincent Brandt, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for his Complaint against Defendant Kia America, Inc. ("Kia" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.      Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of these listed duties and rules.

2.      Plaintiff brings this action on behalf of himself, and all similarly situated persons who purchased or leased any 2020-2024 Kia Telluride manufactured between January 9, 2020, and May 29, 2024 ("Class Vehicles").

2

CLASS ACTION COMPLAINT

3.      This action is brought to remedy various violations of law in connection with Defendant's manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4.      Specifically, these Class Vehicles have malfunctions regarding their front power seat motor, which may overheat due to a stuck slide knob, presenting a risk of fire while the car is parked or being driven ("Power Seat Motor Defect").[1]

5.      On May 29, 2024, Kia recalled 462,869 of the above referenced Class Vehicles ("Recall").[2]

6.      The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## **JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand,

---

[1] https://www.npr.org/2024/06/07/nx-s1-4996584/kia-telluride-recall-fire-risk
[2] *Id.*

3

CLASS ACTION COMPLAINT

and Defendant, on the other, are citizens of different states.

8.     This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of Class Vehicles throughout this District.

9.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, given that Defendant sells and distributes their vehicles throughout the United States and within this District.

## PARTIES

10.     Vincent Brandt is a citizen of the State of Michigan and resides in Burton, Michigan. Burton is located within Genesee County, Michigan.

11.     In July of 2020, Plaintiff purchased his 2020 Kia Telluride from Kia of Jackson, Michigan.

12.     Based on Kia's active and persistent promotions touting the quality of its vehicles and his admiration of Kia vehicles, Plaintiff considered Kia a quality company with a strong reputation for producing reliable and safe vehicles.

13.     In addition to Kia's reputation through its marketing and promotion,

4

CLASS ACTION COMPLAINT

Plaintiff decided on the 2020 Kia Telluride because he believed it was a high-quality vehicle after a salesman convinced him that the vehicle was safe, highly reliable and came with great technological features.

14.     Since purchasing his 2020 Kia Telluride, Plaintiff has only taken the vehicle to Kia dealerships for its routine maintenance as recommended by both the vehicle alert system and the Service Department at Kia of Jackson, Michigan.

15.     However, through Plaintiff's consistent visits to Kia dealerships, he has never been told of any recalls or defects related to his seat motors, or that said motors posed a risk of overheating and fire.

16.     Defendant is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. Defendant's Corporate Headquarters are located at 111 Peters Canyon Road, Irvine, California 92606.

17.     Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide and in South Carolina. Defendant is the warrantor and distributor of the Class Vehicles in the United States.

18.     Defendant, through various entities, markets, distributes, warrants, and sells Kia automobiles and parts for those automobiles, including the Class

5

CLASS ACTION COMPLAINT

Vehicles, in multiple locations across the United States, including California.

## **FACTUAL ALLEGATIONS**

19. Since 2020, Defendant has designed, manufactured, distributed, sold, and leased the Class Vehicles. Defendant has sold, directly or indirectly, through dealers and other retail outlets, over four hundred thousand Class Vehicles in California and nationwide.[3]

20. As discussed earlier and in more detail below, the Class Vehicles contain a design defect that causes a serious safety concern. The design defect with the Class Vehicles is contained in the front power seat motor ("Power Seat Motor Defect").

21. In more detail, the Class Vehicle's "problem stems from a slide knob in the front power seat motor that may get stuck and overheat, creating a risk of fire while the car is parked or being driven."[4] Strong external impact to the front power seat side cover or seat slide knob can result in internal misalignment, and with continuous operation, can cause overheating. People driving the Class Vehicle may find they can't adjust the power seat, may notice a burning or melting smell or see smoke rising from underneath the seat.[5]

22. Power seat components on Class Vehicles are intended to last the

---

[3] https://www.npr.org/2024/06/07/nx-s1-4996584/kia-telluride-recall-fire-risk
[4] *Id.*
[5] *Id.*

CLASS ACTION COMPLAINT

lifetime of a vehicle and have no regular replacement interval.[6]

23.     As demonstrated by the facts above, there is no foreseeable reason for any of the individual parts to fail. Rather, the failure is caused by Defendant's improper engineering, design, or manufacturing.

24.     Over 400,000 of the Class Vehicles with defective front seat power motors have been sold in America.[7]

25.     The result of Defendant's recall, which includes a free fix and repair clause in which Defendant will repair and replace the faulty parts, will cost Plaintiff hours of her time.

26.     Defendant's Recall is concerning because it does not offer any foreseeable guarantee that the Power Seat Motor Defect will go away permanently. Rather, the Recall mentions installing a bracket for the power seat switch back covers and replacing the seat slide knobs.[8] The Recall does not give any detail on what causes the front power seat motor to get stuck and overheat in the first place.[9]

27.     Even if one was to presume that the Recall was effective and offered a true fix, which is by no means a fair presumption, Plaintiff is still burdened with

---

[6] https://repairpal.com/estimator/kia/telluride/power-seat-motor-replacement-cost
[7] npr.org/2024/06/07nx-s1-4996584/kia-telluride-recall-fire-risk
[8] *Id.*
[9] *Id.*

CLASS ACTION COMPLAINT

a vehicle that has been devalued by Defendant's actions because the value of a car with a known history of faulty power seat motors and a potential fire hazard is worth much less than a car with properly working power seat motors, or at least not having a history of defects with risks of the car catching on fire.

28.   Given the information above, there is a cognizable risk inherent within this Recall. Unless Defendant is to issue a more comprehensive recall to truly fix the root cause of the Power Seat Motor Defect, it is foreseeable, and should be expected, that the Class Vehicles' power seat motors will fail once again. Defendant's Recall is no more than a repeatedly ineffective waste of time as there is no true fix for the Power Seat Motor Defect.

29.   In all, Defendant's Recall leaves more questions than answers regarding the Class Vehicles' safety and power seat motor system and as such results in a diminution in value for the vehicles in question.

30.   Transitioning back to the repair itself, at a bare minimum, a thirty-minute repair time means that it will take Defendant 231,500 hours to repair the Class Vehicles. In a more comprehensible term, 231,500 hours amounts to a little more than twenty-six years.

31.   In addition to the sheer amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport himself and

CLASS ACTION COMPLAINT

his defective Class Vehicle to a Kia certified mechanic. For Plaintiff, this service center is Kia of Grand Blanc, Michigan and his commute begins at his home in Burton, Michigan. Plaintiff's repair-related commute is roughly a 9 mile, 20 minute trip.

32.     Given the math above, Plaintiff may spend up to 2 hours, but no less than 1 hours, in repairing her Class Vehicle.

33.     In addition to the sheer amount of time spent in repairing his vehicle, Plaintiff is faced with another difficult expense, the price of towing his vehicle. The average cost of towing, per mile, is $4.75 per mile.[10]   Given Plaintiff's roughly 9 mile commute, this cost amounts to $43 taken from Plaintiff for his own Class Vehicle to be safely repaired.

34.     Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff's total time spent on his vehicle amounts to three hours, unless of course, one is to assume that Plaintiff drives his potentially flammable Class Vehicle to the dealership.

35.     In all, Defendant's Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

## **CLASS ACTION ALLEGATIONS**

---

[10] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/#:~:text=The%20average%20cost%20per%20mile,mile%20on%20the%20high%20end.&text=Many%20towing%20companies%20may%20also,miles%20you%20need%20to%20go.

CLASS ACTION COMPLAINT

36.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **Nationwide Class:** All persons in the United States who purchased or leased any 2020-2024 Kia Telluride manufactured between January 9, 2019, and May 29, 2024.

> **California Subclass:** All persons from California who purchased or leased any 2020-2024 Kia Telluride manufactured between January 9, 2019, and May 29, 2024.

37.     Together, the Nationwide Class and California Subclass will be collectively referred to as the "Class" or "Classes". Members of these Classes will be referred to as "Class Members".

38.     Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

39.     Excluded from each of the putative classes are any person who falls within the definitions if the person is: (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

40.     The proposed class definitions in ¶ 39 as limited by ¶ 40˙ may be amended or modified from time to time.

41.     The particular members of the (i) Nationwide Class, and (ii)

10

CLASS ACTION COMPLAINT

California Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

42.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43.     The Proposed Classes are so numerous that the joinder of all members is impracticable.

44.     This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

45.     Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may

11

CLASS ACTION COMPLAINT

include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Typicality: Fed R. Civ. P. 23(a)(3)**

46.     Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the same Power Seat Motor Defect found in all other Class Vehicles.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

47.     Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class he seeks to represent.  Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

**Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)**

48.     A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members and questions of law and fact common to all class members predominate over questions affecting only individual class members. Class members can be readily identified and notified based on, inter alia, Defendant's business records or other sources including those from the state of California.

12

CLASS ACTION COMPLAINT

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)**

49.     Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a. Whether Class Vehicles contain the alleged Power Seat Motor System

       Defect;

    b. Whether the Power Seat Motor System Defect would be considered material by a reasonable consumer;

    c. Whether the Power Seat Motor System Defect would constitute an unreasonable safety risk;

    d. Whether Defendant had a duty to disclose the Power Seat Motor System Defect to Plaintiff and other Class Members;

    e. Whether Defendant knew or reasonably should have known of the Power Seat Motor System Defect before it sold and leased Class Vehicles to Plaintiff and Class Members;

    f. Whether the Power Seat Motor System Defect has diminished the value of the Class Vehicles;

13

CLASS ACTION COMPLAINT

g.  Whether the Power Seat Motor System Defect is capable of being repaired;

h.  Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the Power Seat Motor System Defect;

i.  Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective power seat motor parts;

j.  Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

k.  Whether Defendant is liable for fraudulent omission;

l.  Whether Defendant was unjustly enriched;

m. Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

## COUNT 1
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

50.    Plaintiff incorporates Paragraphs 1-49 as if fully set forth herein.

51.    Plaintiff brings this count on behalf of himself and the Classes.

14

CLASS ACTION COMPLAINT

52.     Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

53.     The Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

54.     Defendant entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

55.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

56.     Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendant did not indicate that the Class Vehicles would contain the Power Seat Motor Defect.

57.     Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of the Class Vehicles catching on fire- the Class

15

CLASS ACTION COMPLAINT

Vehicles are not fit for their particular purpose of legal transportation and usage. Defendant's Recall does nothing to truly address this risk, given that there is no explanation on the cause of the Defect. Rather, the Recall places Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

58.     Defendant's warranty expressly applies to the purchaser of the Class Vehicles, creating privity between Defendant and Plaintiff and Class Members.

59.     Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales.     Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

60.     Defendant provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles.  Defendant was put on actual notice of its breach though the contract between Plaintiff and Class Members and Defendant, and its review of consumer complaints.

61.     Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would have defective power seat motor systems that created a fire hazard that could engulf the Class Vehicles in flames at any time, they would not have purchased the Class Vehicles or would have paid less for them.  To

16

CLASS ACTION COMPLAINT

reiterate, had Plaintiff and Class Members known of the Power Seat Motor System Defect, they would not have purchased Class Vehicles.

62.    As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

63.    Plaintiff suffered injury in that he purchased a vehicle that is worthless.  For all intents and purposes, Plaintiff's vehicle is now a notoriously unsafe vehicle which could catch fire at any time, while in park or while driving.

64.    Plaintiff also suffered economic loss in reference to the value of his vehicle.  As a result of Defendant's Recall, Plaintiff's vehicle resale value is now diminished.  When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

65.    Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendant's recall. Had Defendant produced a vehicle that was roadworthy and reliable,

17

CLASS ACTION COMPLAINT

Plaintiff would not have had to spend hours upon hours of his life tending to this Recall. Plaintiff did not bargain for, or pay for, a vehicle that could catch on fire in park or while driving and which he has to park outside due to the risk of fire to other structures such as his garage or home.

## COUNT II
### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT

66.     Plaintiff incorporates Paragraphs 1-49 as if fully set forth herein.

67.     Plaintiff brings this count on behalf of himself and the Classes.

68.     Plaintiff brings this count under California law, individually and on behalf of the Classes.

69.     Defendant had actual knowledge that the Class Vehicles suffered from an inherent defective Power Seat Motor System, was defectively designed and/or manufactured, and was not suitable for their intended use prior to their sale.

70.     Having been aware of the Power Seat Motor System Defect and knowing that Plaintiff and Class members could not have reasonably been expected to know of the Defect, Defendant had a duty to disclose the Power Seat Motor System Defect to Plaintiff and Class Members in connection with the sale of the Class Vehicle. Defendant had a further duty to disclose the Defect because:

18

CLASS ACTION COMPLAINT

a. Defendant was in a superior position to know the true state of facts about the Power Seat Motor System Defect contained in the Class Vehicles, and Defendant knew these facts were not known or reasonably discoverable by Plaintiff or Class Members;

b. Given the Power Seat Motor System Defect's technical and hidden nature, Plaintiff and Class Members lack the sophistication and expertise in vehicle components that would be necessary to discover the Power Seat Motor System Defect on their own;

c. Defendant knew that the Power Seat Motor System Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the omitted facts relating to the Defect were material because they directly impact the safety of the Class Vehicles and would have been part of the decision to buy or lease the Class Vehicles;

d. Defendant made incomplete representations about the safety and reliability of the Class Vehicles while actively withholding and concealing the material facts about the known defective nature of the Class Vehicles from Plaintiff and Class Members. In uniform advertising and materials provided with each Class Vehicle, Defendant intentionally concealed, suppressed, and failed to

19

CLASS ACTION COMPLAINT

disclose to the consumers that the Class Vehicles contained the Power Seat Motor System Defect. Because it volunteered to provide information about the Class Vehicles that it marketed and offered for sale and lease to consumers, Defendant had the duty to disclose the whole truth.

71.    Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles, in direct breach of its duties.

72.    The fact that Defendant's Class Vehicles contained the Power Seat Motor System Defect is a material fact as any system defect that could potentially cause the vehicle to catch on fire is a critical defect, and a reasonable person would find it important when deciding the purchase or lease a new or used motor vehicle and because it directly impacts both the value and safety of the Class Vehicles purchased or leased by the Plaintiff and Class Members.

73.    Defendant was knowledgeable of the falsity of the safety of the Power Seat Motor System Defect and/or recklessly disregarded the truth or falsity of the dangerous nature of the Power Seat Motor System Defect.

74.    Defendant intended for Plaintiff and Class Members to rely and act upon such falsity as part of Defendant's commercial operations to sell vehicles –

20

CLASS ACTION COMPLAINT

which they did by purchasing and leasing the Class Vehicles at the prices they paid while believing that their vehicles would not have a Power Seat Motor System Defect that would affect the quality, reliability, and safety of the Class Vehicles.

75.     Plaintiff and Class Members' reliance was reasonable, as they had no way of discerning and learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class Members did not, and could not, unravel Defendant's deception on their own.

76.     Plaintiff and Class Members would not have purchased the Class Vehicles had they known of such Power Seat Motor System Defect, or would have paid less for them. Plaintiff and the Class Members did not know of such Power Seat Motor System Defect and relied upon the false presentation of safety in their purchases of Class Vehicles.

77.     The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether a vehicle catches fire when the Power Seat Motor System fails is a material safety concern. Had Plaintiff and Class Members known about the defective nature of the Class

CLASS ACTION COMPLAINT

Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

78.     Defendant actively concealed and suppressed these material facts, in whole or in part, in order to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendant and their products. They did so at the expense of Plaintiff and Class Members.

79.     If Defendant had fully and adequately disclosed the Power Seat Motor System Defect to consumers, Plaintiff and Class Members would have seen such a disclosure.

80.     Through Defendant's omissions and concealment regarding the Power Seat Motor System Defect within the Class Vehicles, Defendant intended to induce, and did induce, Plaintiff and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

81.     Plaintiff and other Class Members justifiably relied on Defendant's omissions to their detriment.  This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Vehicles.

82.     As a direct and proximate result of Defendant's misconduct, Plaintiff

CLASS ACTION COMPLAINT

and Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class Members reserve their right to elect either to: (a) rescind their purchase or lease of the Defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the Defective Vehicles and recover damages.

83.   Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class Members' rights and well-being to enrich Defendant.   Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

84.   Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

85.   Plaintiff also suffered economic loss in reference to the value of his vehicle.   As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished.   When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

86.   Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly

CLASS ACTION COMPLAINT

inconvenienced by Defendant's Recall.

## **COUNT III**

### **UNJUST ENRICHMENT**

87.     Plaintiff incorporates paragraphs 1-49 as if fully set forth herein.

88.     Plaintiff brings this count on behalf of himself and the Classes.

89.     Under California Law, because the parties had an express contract which was procured by fraud, it is equitable for Defendant to provide Plaintiff and Class Members with restitution.

90.     Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Vehicles.

91.     Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

92.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing working power seat motors in the Class Vehicles, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

93.     The circumstances, as described herein, are such that it would be

24

CLASS ACTION COMPLAINT

inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

94.    Defendant manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe, operable, and not subject to catching fire at any moment. Instead, Defendant sold vehicles with an inherent fire hazard that could engulf the car in flames at any moment.  Rather than refunding or reimbursing Plaintiff and Class Members the difference in value related to the diminished resale value, Defendant has offered to simply fix the Class Vehicles with a fix that appears to do no more than replace the defective systems with no guarantee that the root cause of the problem is solved.

95.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

**COUNT IV**
**STRICT LIABILITY: DESIGN DEFECT**

96.    Plaintiff incorporates paragraphs 1-49 as if fully set forth herein.

97.    At all times relevant, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and

25

CLASS ACTION COMPLAINT

stream of commerce for sale to the consuming public.

98.     Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

99.     At all times, Defendant held final design approval authority for the subject Class Vehicles.

100.    The Power Seat Motor System Defect could happen at any time when the sliding knob gets stuck, causing it to overheat and potentially engulf the vehicle in flames.

101.    The Class Vehicles' design is excessively dangerous.  The risk of danger inherent in the Class Vehicles' design and manufacture outweighs any benefit of the design.

102.    Defendant knew or should have known that Plaintiff and the Class Members would purchase and use the Class Vehicles without inspection for defect. Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendant's dealerships and/or other resellers.

103.    As a direct and proximate result of Defendant's conduct, including actions, omissions, and misrepresentations, Plaintiff and the Class Members have sustained damages:

CLASS ACTION COMPLAINT

a.  Economic damages due to this Defect as they are now stuck with vehicles that are unsafe and relatively worthless when compared to the purchase price; and

b.  Noneconomic damages including emotional distress, inconvenience, loss of enjoyment, past and future.

## COUNT V
## STRICT LIABILITY: MANUFACTURING DEFECT

104.   Plaintiff incorporates paragraphs 1-49 as if fully set forth herein.

105.   This Count is pled in the alternative to the above count of design defect.

106.   At all times relevant, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the consuming public.

107.   Along with Class Vehicles, Defendant designs, manufactures, and produces all sorts of other vehicles.  Given Defendant's other vehicles are capable of having a Power Seat Motor System that doesn't overheat and catch fire, it logically follows that the Class Vehicles would share the same fate.

108.   The Class Vehicles presumably are capable of safe operation as Defendant produces many other vehicles that are capable of such safety and

27

CLASS ACTION COMPLAINT

adequate operation.  Unfortunately, this presumption is not reality.  The Class Vehicles are in danger of overheating and catching fire at any moment due to the defective Power Seat Motor System.

109.  Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

110.  At all times, Defendant held final manufacture approval authority for the subject Class Vehicles.

111.  Class Vehicles contain a defect as discussed earlier in which a sliding knob can get stuck and overheat, putting the Class Vehicles in danger of catching on fire.  This failure of such sliding knob deviates from the adequate design.  But for the failure of the sliding knob and other components of the Power Seat Motor System, due to its improper manufacture, the Power Seat Motor System of the Class Vehicles would work.

112.  The Class Vehicles' design is excessively dangerous.  The risk of danger inherent in the Class Vehicles design and manufacture outweighs any benefit of the design.

113.  Defendant knew or should have known that Plaintiff and Class Members would purchase and use the Class Vehicles without inspection for defect.  Aside from being entirely uncommon for a consumer to disassemble and

28

CLASS ACTION COMPLAINT

inspect a vehicle, it is also unlikely to be permitted by Defendant's dealership and/or other resellers.

114.   As a result of this faulty manufacture of the Power Seat Motor System, the Class Vehicles are now relatively worthless when compared to their original purchase price and relative value and are unsafe.

115.   Given the loss of value and lack of safety, Plaintiff and Class Members have been damaged and will continue to suffer damages.

### **COUNT VI**

### **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301 *ET SEQ.*)**

116.   Plaintiff incorporates paragraphs 1-49 as if fully set forth herein.

117.   Plaintiff brings this Count individually and on behalf of the Class.

118.   Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

119.   Defendant is a "supplier" and "warrantor" within the meaning of the MMWA.

120.   The Class Vehicles are "consumer products" within the meaning of the MMWA.

121.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied

29

CLASS ACTION COMPLAINT

warranty.

122.   Defendant's express warranties are written warranties within the meaning of the MMWA.

123.   Defendant breached its warranties by offering for sale and selling the Class Vehicles, which were by design and construction defective and unsafe due to the Power Seat Motor System Recall. Defendant's actions subjected Plaintiff and the Class Members to danger as well as monetary damages in that the Class Vehicles are inherently worth less compared to their value had the Class Vehicles been free of the Power Seat Motor System Defect.

124.   Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall and Defect as Plaintiff and the Class Members have had to collectively spend thousands of hours and thousands of dollars in time and costs related to repairing the Power Seat Motor System Defect.

125.   Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Class, when the Vehicles fail to perform due to the Defect.

126.   As a result of these breaches, Plaintiff and Class Members have suffered damages.

30

CLASS ACTION COMPLAINT

127.   Plaintiff and Class Members seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Class may be entitled.

128.   Plaintiff and Class Members suffered injury through Defendant's conduct in that Plaintiff and the Class Members are now owners of vehicles that are worth significantly less, given the Defect and the notoriety therein.

129.   Plaintiff and Class Members suffered injury through Defendant's conduct in that Plaintiff and the Class Members have, or will have to, spend hours upon hours of their own time, and thousands of dollars in towing fees, in seeking repair for these Class Vehicles.  Regardless of Defendant's free repair, Plaintiff and the Class Members are still required to spend hours in time and thousands of dollars in bringing their vehicles to Defendant's dealerships for repair.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A. Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

31

CLASS ACTION COMPLAINT

B. Declaring that Defendant is financially responsible for notifying the Proposed Class Members of the pendency of this action;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

32

CLASS ACTION COMPLAINT

Dated: June 26, 2024

By: */s/ Eric M. Poulin*

**POULIN | WILLEY ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
    *eric.poulin@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
    *paul.doolittle@poulinwilley.com*
Seth Little *(Pro Hac Vice* Forthcoming*)*
    *seth.little@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

AND

**BOHREN LAW**
John C. Bohren (California State Bar No. 298476)
8560 West Sunset Boulevard, 4th Floor
West Hollywood, CA 90069
Telephone: (619) 433-2803
Fax: (800) 867-6779

*Attorneys for Plaintiffs*

33

CLASS ACTION COMPLAINT